GEORGE S. COE and others

v.

THE NEW JERSEY MIDLAND RAILWAY COMPANY and others.

1. By virtue of an agreement made subsequent to a mortgage with the grantees of the mortgagors, a railroad company claimed the right to construct approaches to their tunnel, over lands and railroad track covered by the mortgage, thereby inflicting serious damage, and pro posing to allow no compensation, except the cost of the alteration at the crossing. *Held*, that such right would not be determined on a petition for an injunction to prevent the injury, filed by the receiver of the mortgagors, as auxiliary to a bill to foreclose, where the respondents were not parties to such bill. They should be made parties in order that the question may be directly litigated.

2. The mortgagees *Held*, under the circumstances, not estopped by acquiescence.

3. The injunction restraining the building of the approaches was modified so far as to allow the construction to go on, on condition that the respondents make and pay for all alterations in the petitioners' track, where rendered necessary thereby, and give bond to pay for all other damage inflicted, including the value of the land occupied, preserving to the petitioners the use and benefit of their drill-yard, &c., the grade of which would be affected by the raising of the track at the crossing.

Bill to foreclose. On petition of receivers for injunction and answer thereto, and order to show cause.

*Mr. Ashbel Green* and *Mr. B. Williamson*, for the petitioners.

*Mr. Jacob Vanatta*, for the Delaware, Lackawanna and Western Railroad Company.

THE CHANCELLOR.

The receivers appointed in this suit (which is for foreclosure of the first mortgage) by their petition pray relief against the threatened action of the Delaware, Lackawanna

and Western Railroad Company, in taking possession of and laying their track on part of the mortgaged premises, for the alteration of the Morris and Essex railroad and Boonton branch, to bring them into their new tunnel through Bergen Hill. To make the proposed alteration, it will be necessary to lay the tracks above the grade of the Midland road. This will necessitate the raising of the tracks of that road, which will involve a very great expense. Besides, the land which the respondents intend to occupy with the tracks is part of the freight and drill-yard of the Midland road.

The respondents, in their answer, rely, for the establishment of their right to do the act complained of, upon two agreements made between them and the Hudson Connecting Railway Company, by one of which, they insist, the right now claimed by them was granted.

The petitioners, on the other hand, claim that when that grant was made, the land in question was subject to the complainants' mortgage (which was executed and delivered in 1870), and that the mortgagees have not consented to and are not bound by the grant.

The respondents not only claim that their right is superior to that of the mortgagees, but, also, that if such be not the case, the latter are estopped by acquiescence. The respondents have not been made parties to this suit.

The proposed action of which the petitioners complain, will, if permitted, inflict very great damage upon the mortgaged premises, for which the respondents, relying upon the before mentioned grant, propose to make no compensation. They propose, indeed, to pay the expense of raising the tracks of the Midland road at, and at each end of, the crossing, to the grade of their proposed tracks, but do not recognize any liability to do any more or to pay any damages. The mortgagees are not, on the case presented, estopped by acquiescence. The agreements in question were made, one on the 3d of April, 1872, and the other on

the 16th of October, in the same year; both with the Connecting Railway Company.

The petitioners allege that the land which the respondents propose to occupy, was, at or after the date of the mortgage, the property of the mortgagors, and was subsequently conveyed by them to the Connecting Railway Company; and that, by the terms of the mortgage, it became subject to the lien thereof, and was so when the agreements of April and October, 1872, were made. There is no evidence that the mortgagees were even cognizant of the existence of these agreements. Nor was the fact of the construction of the tunnel and its approaches, notorious as it was, notice to them that the respondents were constructing the work on the faith of the agreement with the Connecting Railway Company. The mortgagees might well have presumed that they intended to obtain the right to cross the mortgaged premises by means of proceedings for condemnation, which would involve the necessity of making compensation for damages.

On the case presented, the order to show cause would not be discharged on the ground of estoppel. Nor, on the other hand, would it be just to the respondents to adjudge the question of their right to the grant under the agreements before mentioned, on the case as it stands. They should be made parties to this suit, in order that they may have an opportunity to litigate the question whether the grant is subject to the mortgage or not. The order to show cause will be continued, in order to afford them an opportunity to meet this question. The continuance of the *ad interim* injunction, however, will prevent the consummation of a great and most costly public enterprise, and so be productive of inconvenience to the public. The court is therefore desirous of relieving the respondents from the injunction, if practicable consistently with the rights of the petitioners and the mortgagees; but it will be done only on such terms as will secure those rights.

The injunction will be modified, so as to permit the respondents to make the proposed alteration; they paying for the raising of the track of the Midland road where rendered necessary thereby, and doing the necessary filling, and giving bond, with sufficient security, to pay such damages (to be ascertained by the court), including the value of the land taken, as may be occasioned by the taking and occupation of the land with the proposed tracks.

The agreement of October provides for a reference to the chief engineer for the time being of the Philadelphia and Reading Railroad Company, in case the parties shall be unable to agree upon the modification, change, or alteration of tracks. Under the circumstances, the proposed alterations should be passed upon by this court before they are made.

It follows, from what has been said above, that the crossing which it is intended to authorize by the modification of the injunction, must be on such a plan as that, when it shall have been made, and the tracks of the Midland road shall have been adjusted thereto by the respondents, the use of the Midland road and its freight and drill-yard will not be rendered less convenient than it is now. I am led to presume that such a plan may readily be adopted from the fact that it appears that before the filing of the petition, an accommodation, saving the rights of the mortgagees to compensation, was deemed practicable by the receivers. But I am not willing, as the case stands, to permit the respondents to occupy the Midland property with their tracks, without first making compensation, if it cannot be done without serious injury thereto.